Michael K. Friedland (SBN 157,217)
mfriedland@knobbe.com
Lauren K. Katzenellenbogen (SBN 223,370)
lauren.katzenellenbogen@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Samantha Y. Hsu (SBN 285,853)
samantha.hsu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
OAKLEY, INC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY, INC., a Washington corporation, | ) Civil Action No. **13 CV 0866 GPC JMA** |
| Plaintiff, | ) **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | ) **DEMAND FOR JURY TRIAL** |
| JAY-Y ENTERPRISE CO., INC, a California corporation, | ) |
| Defendant. | ) |

COMPLAINT

Plaintiff Oakley, Inc. ("Oakley") hereby complains of Defendant Jay-Y Enterprise Co., Inc. ("Defendant" or "Jay-Y") and alleges as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338, as it arises under the patent laws of the United States.

2.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this judicial district, including by selling and offering for sale infringing products in this judicial district, and by committing acts of patent infringement in this judicial district, including but not limited to selling infringing eyewear directly to consumers and/or retailers in this district and selling into the stream of commerce knowing such products would be sold in California and this district, which acts form a substantial part of the events or omissions giving rise to Oakley's claim.

3.      Venue is proper in this judicial district under 28 U.S.C. §1391 (b) and (c), and 28 U.S.C. § 1400(b).

## II.  THE PARTIES

4.      Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

5. Oakley is informed and believes, and thereon alleges, that Defendant Jay-Y is a corporation organized and existing under the laws of the state of California, having its principal place of business at 632 New York Drive, Pomona, California 91768.

6. Oakley is informed and believes, and thereon alleges, that Defendant has committed the acts alleged herein within this judicial district.

/ / /

COMPLAINT

### III.  GENERAL ALLEGATIONS

7.     Oakley has been actively engaged in the manufacture and sale of high quality eyewear since at least 1985.  Oakley is the manufacturer and retailer of several lines of eyewear that have enjoyed substantial success and are protected by various intellectual property rights owned by Oakley.

8.     On June 10, 1997, the United States Patent and Trademark Office duly and lawfully issued United States Patent No. 5,638,145 ("the '145 patent"), entitled "Vented Eyeglass Lens."  Oakley is the owner by assignment of all right, title, and interest in the '145 patent.  A true and correct copy of the '145 patent is attached hereto as Exhibit A.

9.     On May 29, 2007, the United States Patent and Trademark Office duly and lawfully issued United States Design Patent No. D543,572 ("the D572 patent"), entitled "Eyeglass."  Oakley is the owner by assignment of all right, title, and interest in the D572 patent.  A true and correct copy of the D572 patent is attached hereto as Exhibit B.

10.     On June 1, 2010, the United States Patent and Trademark Office duly and lawfully issued United States Design Patent No. D616,919 ("the D919 patent"), entitled "Eyeglass Front."  Oakley is the owner by assignment of all right, title, and interest in the D919 patent.  A true and correct copy of the D919 patent is attached hereto as Exhibit C.

11.     On August 26, 2003, the United States Patent and Trademark Office duly and lawfully issued United States Design Patent No. D478,929 ("the D929 patent"), entitled "Eyeglass."  Oakley is the owner by assignment of all right, title, and interest in the D929 patent.  A true and correct copy of the D929 patent is attached hereto as Exhibit D.

12.     Defendant manufactures, uses, sells, offers for sale and/or imports into the United States eyewear that infringe Oakley's intellectual property rights.

13.   Oakley has provided the public with constructive notice of its patent rights pursuant to 35 U.S.C. § 287.

## IV.  CLAIM FOR RELIEF

(Patent Infringement)
(35 U.S.C. § 271)

14.   Oakley repeats and re-alleges the allegations of paragraphs 1-13 of this Complaint as if set forth fully herein.

15.   This is a claim for patent infringement under 35 U.S.C. § 271.

16.   Defendant, through its agents, employees and servants, has, and continues to, knowingly, intentionally and willfully directly infringe, engage in acts of contributory infringement, and/or induce the infringement of the '145 patent by directly and/or indirectly making, using, selling, offering for sale and/or importing eyewear that are covered by the '145 patent, including Defendant's XLoop sunglass model "8X3579."

17.   Defendant's acts of infringement of the '145 patent were undertaken without permission or license from Oakley.  Defendant had actual and/or constructive knowledge of the '145 patent and its actions constitute willful and intentional infringement of the '145 patent.  Defendant infringed the '145 patent with reckless disregard of Oakley's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the '145 patent.  Defendant's acts of infringement of the '145 patent were not consistent with the standards of commerce for its industry.

18.   Defendant, through its agents, employees and servants, has, and continues to, knowingly, intentionally and willfully directly infringe, engage in acts of contributory infringement, and/or induce the infringement of the D572 patent by directly and/or indirectly making, using, selling, offering for sale

/ / /

-3-                                   COMPLAINT

and/or importing eyewear that are covered by the D572 patent, including Defendant's XLoop sunglass model "8X2292."

19.   Defendant's acts of infringement of the D572 patent were undertaken without permission or license from Oakley.  Defendant had actual and/or constructive knowledge of the D572 patent and its actions constitute willful and intentional infringement of the D572 patent.  Defendant infringed the D572 patent with reckless disregard of Oakley's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the D572 patent.  Defendant's acts of infringement of the D572 patent were not consistent with the standards of commerce for its industry.

20.   Defendant, through its agents, employees and servants, has, and continues to, knowingly, intentionally and willfully directly infringe, engage in acts of contributory infringement, and/or induce the infringement of the D919 patent by directly and/or indirectly making, using, selling, offering for sale and/or importing eyewear that are covered by the D919 patent, including Defendant's Biohazard sunglass model "8BZ66121."

21.   Defendant's acts of infringement of the D919 patent were undertaken without permission or license from Oakley.  Defendant had actual and/or constructive knowledge of the D919 patent and its actions constitute willful and intentional infringement of the D919 patent.  Defendant infringed the D919 patent with reckless disregard of Oakley's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the D919 patent.  Defendant's acts of infringement of the D919 patent were not consistent with the standards of commerce for its industry.

22.   Defendant, through its agents, employees and servants, has, and continues to, knowingly, intentionally and willfully directly infringe, engage in

acts of contributory infringement, and/or induce the infringement of the D929 patent by directly and/or indirectly making, using, selling, offering for sale and/or importing eyewear that are covered by one or more claims of the D929 patent, including Defendant's Polarized XLoop sunglass model "PZ/X2056" and XLoop sunglass model "8X2056."

23.     Defendant's acts of infringement of the D929 patent were undertaken without permission or license from Oakley.  Defendant had actual and/or constructive knowledge of the D929 patent and its actions constitute willful and intentional infringement of the D929 patent.  Defendant infringed the D929 patent with reckless disregard of Oakley's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the D929 patent.  Defendant's acts of infringement of the D929 patent were not consistent with the standards of commerce for its industry.

24.     As a direct and proximate result of Defendant's patent infringement, Defendant has derived and received gains, profits, and advantages in an amount not presently known to Oakley.

25.     Pursuant to 35 U.S.C. § 284, Oakley is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

26.     Pursuant to 35 U.S.C. § 289, Oakley is entitled to Defendant's total profits from the sale of eyewear that infringe any one of Oakley's design patents.

27.     Pursuant to 35 U.S.C. § 285, Oakley is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

28.     Due to the aforesaid infringing acts, Oakley has suffered great and irreparable injury, for which Oakley has no adequate remedy at law.

/ / /

COMPLAINT

29.     Defendant continues to directly and/or indirectly infringe Oakley's patents to the great and irreparable injury of Oakley, unless enjoined by this Court.

WHEREFORE, Oakley prays for judgment in its favor against Defendant for the following relief:

A.     An Order adjudging Defendant to have willfully infringed the '145 patent, the D572 patent, the D919 patent, and the D929 patent under 35 U.S.C. § 271;

B.     A preliminary and permanent injunction enjoining Defendant, its respective officers, directors, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant, from directly or indirectly infringing the '145 patent, the D572 patent, the D919 patent, or the D929 patent patents in violation of 35 U.S.C. § 271;

C.     That pursuant to 35 U.S.C. § 284, Defendant account for all gains, profits, and advantages derived from Defendant's infringement and that Defendant pay to Oakley all damages suffered by Oakley as a result of Defendant's infringement;

D.     That pursuant to 35 U.S.C. § 289, Defendant account for its total profit from Defendant's infringement of any of Oakley's design patents;

E.     An Order for a trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 35 U.S.C. § 284;

F.     An Order adjudging that this is an exceptional case;

F.     An award to Oakley of the attorneys' fees, expenses, and costs incurred by Oakley in connection with this action pursuant to 35 U.S.C. § 285;

H.     An award of pre-judgment and post-judgment interest and costs of this action against Defendant;

I.     That Oakley have and recover the costs of this civil action, including reasonable attorneys' fees;

-6-                            COMPLAINT

1       J.    An award of pre-judgment and post-judgment interest and costs of

2   this action against Defendant; and,

3       K.    Such other and further relief as this Court may deem just and

4   proper.

5                        KNOBBE, MARTENS, OLSON & BEAR, LLP

6

7

8   Dated: <u>April 10, 2013</u>    By: <u>*/s/ Ali S. Razai*</u>

9                        Michael K. Friedland
                         Lauren Keller Katzenellenbogen

10                       Ali S. Razai
                         Samantha Y. Hsu

11                       Attorneys for Plaintiff
                         OAKLEY, INC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff Oakley, Inc. hereby demands a trial by jury on all issues so triable.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>April 10, 2013</u>     By: <u>*/s/ Ali S. Razai*</u>
Michael K. Friedland
Lauren Keller Katzenellenbogen
Samantha Y. Hsu
Ali S. Razai

Attorneys for Plaintiff
OAKLEY, INC

15198452

## <u>**TABLE OF EXHIBITS**</u>

<u>**Page #**</u>

Exhibit A ................................................................................................. 1

Exhibit B ................................................................................................. 7

Exhibit C ............................................................................................... 12

Exhibit D ............................................................................................... 16

15197503

# EXHIBIT A



US005638145A

# United States Patent [19]

## Jannard et al.

[11] **Patent Number:** **5,638,145**

[45] **Date of Patent:** **Jun. 10, 1997**

[54] **VENTED EYEGLASS LENS**

[75] Inventors: **James H. Jannard**, Eastsound, Wash.;
**Peter K. Yee**, Irvine, Calif.

[73] Assignee: **Oakley, Inc.**, Irvine, Calif.

[21] Appl. No.: **608,711**

[22] Filed: **Feb. 29, 1996**

[51] Int. Cl.⁶ ..................................... **G02C 1/08**
[52] U.S. Cl. ..................... **351/62; 351/41; 2/435**
[58] Field of Search ........................ 351/41, 62, 86,
351/96, 106; 2/435, 436, 437

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 163,648 | 5/1875 | Gall . | |
| 2,027,037 | 1/1936 | Gottlieb . | |
| 3,160,735 | 12/1964 | Aufricht . | |
| 3,368,221 | 2/1968 | Anderson | 2/437 |
| 3,497,294 | 2/1970 | Volk . | |
| 4,240,718 | 12/1980 | Wichers . | |

| | | |
|---|---|---|
| 5,191,364 | 3/1993 | Kopfer . |
| 5,239,320 | 8/1993 | Allendorf et al. . |
| 5,428,411 | 6/1995 | Kopfer . |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0429899A2 | 6/1991 | European Pat. Off. . |
| 595545 | 10/1925 | France . |
| 766139 | 1/1935 | France . |
| 2205825 | 8/1973 | Germany . |

*Primary Examiner*—Hung X. Dang
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear,
LLP

[57] **ABSTRACT**

Disclosed is a dual-lens vented eyeglass. In one embodiment, each lens is provided with a plurality of apertures extending therethrough, at the junction between the lens and the surrounding frame. In another embodiment, a plurality of apertures are provided in the frame, surrounding the lens. The apertures optimize ventilation, with minimal intrusion into the optical zone.

**5 Claims, 2 Drawing Sheets**





*Fig. 1*



*Fig. 2*

**Exhibit A**
**Page 2**



*Fig. 3*



*Fig. 4*



*Fig. 5*

5,638,145

1

## VENTED EYEGLASS LENS

### BACKGROUND OF THE INVENTION

The present invention relates to eyeglass lenses, and, in particular, to vented eyeglass lenses.

Early dual-lens eyeglass systems generally comprised a right and left lens suspended by an eyeglass frame in the wearer's line of sight. Each of the right and left lenses was generally disposed on a plane which was perpendicular to the wearer's normal or "straight ahead" line of sight. Although the upper portion of the eyeglass frame generally contacts the forehead, a significant ventilation gap was normally present between the lower and lateral edges of the eyeglass lens and the wearer's cheek bone.

Dual lens eyeglasses have more recently been developed in which the eyeglasses exhibit a significant rake and wrap compared to the prior art.

Lens rake refers to the extent to which the lower edge of a lens curves in towards the wearer's face. One effect of enhancing rake in a dual lens system is to more closely conform the lens in the vertical plane to the head of the wearer.

Lens wrap refers to the extent to which the lateral edge of the lens curves rearwardly to conform more closely to the side of the wearer's head.

Increased lens rake and wrap have as a consequence a reduction in the gap between the lower edge of the lens and the face as well as a reduction in the gap between the lateral edge of the lens and the face.

Although increased rake and wrap in dual-lens eyeglasses produce a variety of benefits, one disadvantage is the entrapment of a relatively small volume of air between the lens and the wearer's face. When someone wears eyeglasses of this design during active sports, such as skiing, bicycling or the like, the lenses are susceptible to fogging on the inside surface due to an inadequate ability to circulate moisture-laden air.

Thus, there remains a need for a dual lens eyeglass system which permits a relatively high level of rake and wrap compared to the prior art, yet which minimizes the risk of fogging due to the entrapment of air between the lens and the face of the wearer.

### SUMMARY OF THE INVENTION

There is provided in accordance with one aspect of the present invention a vented dual lens eyeglass system. The eyeglass system comprises a right and a left lens, each having a central optical zone and a peripheral edge. Each lens is provided with at least one recess, extending into the lens from the peripheral edge towards the optical zone. The lens is mounted in an eyeglass frame, which surrounds the peripheral edge of the lens to enclose the recess thereby forming an aperture at the junction between the lens and the surrounding frame.

In another embodiment of the invention, each lens is provided with one or more perforations near the peripheral edge. When the lens is mounted in the frame, the frame overlaps at least a portion of the perforation.

Preferably, a plurality of apertures are provided, spaced apart along the junction between the lens and the frame. Apertures may be provided along the top edge of the lens, or the bottom edge, or either lateral edge, or any combination thereof. In a preferred embodiment, an aperture free zone is provided along a lower medial edge of the lens.

In accordance with another aspect of the present invention, there is provided a method of producing a vented

2

dual lens eyeglass. The method comprises the steps of providing a lens blank, and cutting the lens blank to produce a lens having an outer periphery and a plurality of recesses extending radially inwardly into the lens from the outer periphery. The lens is secured to an eyeglass orbital such that the recesses extend radially inwardly from the orbital to produce a plurality of apertures between the lens and the orbital. The orbital may previously or thereafter be secured to a bridge, earstems and other components of a pair of eyeglasses.

In accordance with a further aspect of the present invention, there is provided a method of optimizing ventilation while minimizing interference with the optical zone in a high wrap, high rake dual lens eyeglass system. The method comprises the steps of producing a right and a left lens for a dual lens eyeglass, each of said lenses having a central optical zone and a peripheral edge. A plurality of recesses or apertures are provided at or near the peripheral edge of the lens. The lens is mounted in an eyeglass frame to produce an eyeglass such that the eyeglass frame intersects at least some of the apertures.

In one embodiment of the invention, each lens as mounted has a vertical dimension within the range of from about 1 inch to about 2½ inches, and a horizontal arc length from about 2 inches to about 3½ inches. In an embodiment having a vertical height of about 1½ inches and a horizontal arc length of about 2½ inches, the sum of the cross-sectional area of the apertures is within the range of from about 0.5% to about 15% of the total area of the lens within the surrounding orbital. Preferably, each recess extends no more than about 0.25 inches radially inwardly towards the center of the lens.

Further features and advantages of the present invention will become apparent from the detailed description of preferred embodiments which follows, when considered together with the attached drawings and claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front perspective view of a dual lens pair of eyeglasses in accordance with the present invention.

FIG. 2 is a front elevational view of a pair of eyeglasses similar to those in FIG. 1, having a different ventilation aperture pattern.

FIG. 3 is a fragmentary cut-away view of a portion of the connection between the lens and the upper frame in the embodiment of FIG. 2.

FIG. 4 is a fragmentary view of an alternative embodiment of the vent apertures of the present invention.

FIG. 5 is another alternate embodiment of the vent apertures of the present invention.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

Referring to FIG. 1, there is disclosed a dual-lens eyeglass system 10. The eyeglass system 10 generally comprises a right lens 12 and a left lens 14 mounted in an eyeglass frame 16 and adapted to be positioned in the wearer's line of sight. Eyeglass frame 16 comprises a right annular orbital 18 for supporting right lens 12 and a left annular orbital 20 for supporting left lens 14. The right orbital 18 and left orbital 20 are connected by way of a bridge 22.

A right temple 24 is connected by way of a hinge 26 to the eyeglass frame 16 as is known in the art. The temple 24 may be provided with any of a variety of structures for improving retention of the eyeglass on the head of the wearer, such as

5,638,145

3

conventional hook shaped rearward portions, or an elasto-meric traction device **28**. Such devices are disclosed and claimed in U.S. Pat. Nos. 5,054,903 and 5,137,342, the disclosures of which are incorporated herein by reference.

The opposing temple **30** is similarly connected at its forward end by way of a hinge **32** to the frame **16**. The rearward end of the temple **30** may also be provided with an elastomeric traction device **34**.

Referring to FIG. 2, there is disclosed an eyeglass frame **16** as in FIG. 1, having lenses **12** and **14** suspended in orbitals **18** and **20**, respectively. Lens **12** is provided with a plurality of apertures **36**, separated from each other by lens portions **38** for connecting the lens **12** to the orbital **18**. In most embodiments of the present invention, the right and left lenses will be mirror images of each other. Accordingly, the apertures **36** will for simplicity be discussed only in connection with a single lens **12**.

Referring to FIG. 3, there is disclosed an enlarged fragmentary view of the aperture **36** in a lens mounted within frame **16**. In this embodiment, the outer peripheral edge **13** of the lens **12** fits within a radially outwardly extending slot in the orbital **18**. Although the present invention will be disclosed in connection with a lens mounted within a slot in the lens orbital, it will be apparent to those of skill in the art that the apertures **36** of the present invention can be readily incorporated into eyeglass systems having lenses mounted to the associated frame in any of a variety of other fashions.

One of the advantages of the design of the present invention is the ability to provide ventilation apertures **36** in a relatively small lens, while at the same time minimizing interference with the optical zone of the lens. In the embodiments illustrated in FIGS. 1–4, this is accomplished by positioning the aperture **36** such that at least a first portion of the circumference of the aperture is formed by the lens and at least a second portion of the circumference of the aperture is formed by a portion of the frame. In an alternate embodiment of the invention illustrated in FIG. 5 and discussed infra, the entire circumference of the aperture is surrounded by the frame.

Apertures can alternatively be positioned in the lens spaced apart from the frame, if the overall lens area is large enough to produce a sufficient uninterrupted optical zone for the desired application.

As will be apparent to those of skill in the art, the cross-sectional shape of the aperture can take any of a variety of forms and still accomplish the objectives of the present invention. For example, FIG. 3 illustrates a lens having a plurality of semicircular apertures **36** at the edge of the lens. Apertures may alternatively be formed by a plurality of enclosed circles punched into the peripheral zone of the lens, which circular holes are partially covered by the frame to produce the appearance of a plurality of semicircles. The apertures **36** in the as mounted condition may thus be defined by a relatively tight radius curved wall **40** in the lens and a relatively flatter curved or straight wall **42** formed by a portion of the frame **16**.

The circular or semi-circular indent in the lens which forms aperture **36** can have a constant or substantially constant radius. Alternatively, the aperture **36** can take any of a variety of alternate forms as will be apparent to those of skill in the art in view of the disclosure herein. For example, the aperture may be defined by a portion or all of a circular, semicircular, oval, elliptical, or non regular curved shape depending upon the shape of the recess or aperture and upon its orientation once mounted in the frame. Angular configurations such as triangular, square, rectangular, or others

4

having sharp corners can be used but tend to be less desirable due to stress dispersion considerations as will be apparent to those of skill in the art. However, the provision of radiused corners in an otherwise angular geometry can minimize the risk of lens fracture. Thus, for example, elongated rectangular apertures with slightly rounded corners can be provided to extend along the interface between the frame and the lens.

The cross-sectional size or area of the aperture **36** can also be varied considerably and remain within the scope of the present invention. Two relevant size considerations are the cross-sectional area of each individual aperture **36**, as well as the sum of all of the cross-sectional areas of all apertures **36** on a given lens. To achieve a desired total cross-sectional flow area, fewer relatively larger apertures **36** may accomplish the same flow objective as relatively more smaller cross-sectional area apertures **36**. In general, the size and number of apertures **36** to achieve a desired total flow area can be optimized depending upon a variety of competing considerations such as desired impact strength for the lens, desired flow distribution across the lens, and the acceptable distance into the optical zone that the apertures **36** can project.

In general, the total cross-sectional flow area of the apertures **36** in the lens will generally range from about 0.2% to about 50% of the total lens area. Preferably the flow area of the apertures will be in the range of from about 0.5% to about 20% of the total lens area, and, more preferably, between about 1% and about 10% of the total lens area. In one embodiment, in a pair of eyeglass lenses as illustrated in FIG. 2 having a generally elliptical shape with vertical height through the lens of about 1.58 inches, and a horizontal arc length of the lens of about 2.62 inches, 13 semicircular apertures each having a radius of about 0.062 inches have a combined cross sectional area of roughly 2.5% of the total area of the lens. For this purpose, the total area of the lens refers to the total area within the orbital or within the outer periphery of the lens if the orbital does not encircle the lens, as though there were no apertures in the lens.

In an embodiment such as that illustrated in FIG. 2, each aperture **36** has a constant radius (r) within the range of from about $\frac{1}{32}$ inch to about $\frac{1}{4}$ inch. In an embodiment having an aperture diameter of $\frac{1}{8}$ inch and having a maximum aperture dimension from the wall **42** to the bottom of the aperture of $\frac{1}{16}$ inch, the width of the aperture **36** at the point of contact with the frame (i.e., the length of wall **42** within a given aperture) is therefore about $\frac{1}{8}$ inch (2r).

Within the range of from about 1 to about 20 or 30 or more total apertures **36** are typically provided for each lens. As the cross sectional area of each aperture gets too small, however, flow may become unacceptably low due to interference and flow rate limiting effects. Thus, no more than about 12 to 18 apertures are generally preferred.

The minimum number of apertures is affected by a variety of factors, including desired air flow and other aspects of the eyeglass design. For example, if the eyewear conforms very closely to the wearer's head, at least one lower edge aperture and at least one upper edge aperture is preferred to permit a convection flow. Preferably, four or more apertures are provided at each of the upper and lower edges. In terms of area, each of the lower and upper edges is preferably provided with apertures totalling at least about 0.2% and more preferably at least about 1% of the total area of the lens. Apertures can be positioned along the top or the bottom edges or either side, or any combination thereof.

In the embodiment illustrated in FIG. 1, the apertures **36** are spaced apart by a distance of about 2r, all the way around

5,638,145

| 5 | 6 |

the orbital 18. Spacing between adjacent apertures 36 can vary within the range of from about ½ of the maximum aperture width up to as much as 5 or 10 or more times the length of wall 42 within an aperture 36 (maximum aperture width). The width of each aperture 36 can extend for a longer distance around the circumference of orbital 18, such as in the case of an elongate slot, or a shorter distance around the circumference of orbital 18, as will be apparent to those of skill in the art.

The distribution of apertures 36 around the circumference of the lens 12 may also be varied asymmetrically. For example, in the embodiment illustrated in FIG. 2, no apertures 36 are provided at the medial (nose piece) side of the lens 12. Apertures in this region can, under high wind conditions, produce an undesirable drying of the eye.

In another embodiment of the vented eyeglass lens of the present invention, a plurality of apertures 44 extend both into the lens 46 as well as into the frame 48. See FIG. 4. This embodiment permits a greater preservation of the optical zone of the lens 46. Alternatively, referring to FIG. 5, there is disclosed an embodiment having a plurality of apertures 50 extending through the frame 52. In this embodiment, the entire circumference of the aperture 50 is surrounded by the frame 52. In a further alternative, the apertures extend through the lens but spaced apart from the frame. Alternatively, portions of the frame can be spaced apart from the lens to form one or more flow passages between the lens and the frame.

In most of the embodiments herein, the apertures are either positioned through the frames or adjacent the frame. This permits the use of an additional bore hole (not illustrated) through the frame for communicating with the aperture to provide an additional flow path. The bore hole in one embodiment extends from the aperture radially outwardly through the outer edge of the frame. Bore holes may be provided for each lens or frame aperture, or only for selected apertures depending upon the desired flow characteristics.

Lenses such as lens 12 in FIG. 2 and lens 46 in FIG. 4 can be manufactured in accordance with any of a variety of techniques well known in the art. For example, the lens may be injection molded from an optically suitable material into the form of a raw lens blank. The profile of the desired finished lens may be cut from the lens blank. Where the aperture 36 is formed along the exterior periphery of the lens, the aperture can be formed simultaneously with cutting the lens from the lens blank.

In an embodiment such as that illustrated in FIGS. 4 or 5, the aperture extends either partially or wholly through the eyeglass frame. The eyeglass frame may be formed such as by injection molding, or other techniques which are appropriate for the material of the eyeglass frame. The recesses on the frame which form a portion of aperture 44 as illustrated in FIG. 4 can be formed as a part of the frame molding process, or can be drilled or otherwise provided in the frame in a post-molding operation. Similarly, the apertures 50 in the embodiment illustrated in FIG. 5 can be formed either during the injection molding or other formation process, or can be provided such as by drilling in a post-forming

operation. The optimal manufacturing technique can be readily determined by those of skill in the art, in view of the construction materials provided, as well as the dimensions and intended utility of the finished eyeglasses. In the embodiment illustrated in FIG. 5, the apertures 52 may or may not pass through a portion of the lens depending upon the extent to which the lens interfits within the frame 52, and the relative width of the frame 52 as will be apparent to those of skill in the art.

Although the present invention has been described in terms of certain preferred embodiments, other embodiments will become apparent to those of skill in the art in view of the disclosure herein. Accordingly, the present invention is intended to be defined solely by reference to the appended claims, and not limited to the preferred embodiments disclosed herein.

What is claimed is:

1. A vented dual lens eyeglass system, comprising:

a right and a left lens each having a central optical zone and a peripheral edge;

at least one recess extending through the peripheral edge of the lens;

an eyeglass frame surrounding at least a portion of the lens;

wherein the eyeglass frame contacts the peripheral edge of the lens on a first side and on a second side of the recess to enclose a non-tortuous aperture, at least a portion of which is spaced apart from the frame in the direction of the optical zone of the lens.

2. A vented dual lens eyeglass system as in claim 1, comprising a plurality of apertures formed around the peripheral edge of the lens.

3. A vented dual lens eyeglass system as in claim 2, wherein each aperture comprises a curved wall, the convex side of which faces the optical zone.

4. A vented dual lens eyeglass system as in claim 1, wherein the eyeglass lens has a vertical dimension within the range of from about 1 inch to about 2 inches, and a horizontal arc length along the surface of the lens within the range of from about 2 inches to about 3 inches.

5. A method of manufacturing vented eyeglasses, comprising the steps of:

providing a lens blank;

cutting the lens blank to produce a lens having an outer periphery and a plurality of recesses extending radially inwardly into the lens from the outer periphery, each recess bordered by a lens edge; and

securing the outer periphery of the lens to an eyeglass orbital such that the recesses extend radially inwardly from the orbital to produce a plurality of apertures between the lens and the orbital, each aperture formed between the edge of the lens surrounding the recess and a portion of the orbital;

wherein a portion of the edge is spaced apart radially inwardly from the portion of the orbital by about the cross section of the aperture.

*   *   *   *   *

# EXHIBIT B

US00D543572S

(12) **United States Design Patent**     (10) **Patent No.:**     **US D543,572 S**

Yee et al.     (45) **Date of Patent:**     ** **May 29, 2007**

(54) **EYEGLASS**

(75) Inventors: **Peter Yee**, Irvine, CA (US); **Colin Baden**, Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/222,726**

(22) Filed: **Feb. 2, 2005**

(51) **LOC (8) Cl.** ................................................... **16-06**

(52) **U.S. Cl.** ........................................ **D16/315**; D16/326

(58) **Field of Classification Search** ............... D16/300, D16/315–316, 325–327, 329, 335; D24/110.2; D29/108–110; 2/426, 428–430, 432, 434, 2/436–437, 441, 447; 351/41, 43–44, 51–52, 351/61–62, 103, 111, 114–119, 122–123, 351/158

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D146,538 S | 4/1947 | Gagnon | |
| 2,482,664 A | 9/1949 | Gagnon | |
| 2,495,508 A | * 1/1950 | Cleaver | ....................... 351/52 |
| 2,561,402 A | 7/1951 | Nelson | |
| 2,607,919 A | 8/1952 | Stegeman | |
| 2,756,631 A | * 7/1956 | Page | ........................... 351/106 |
| D196,000 S | 8/1963 | McNeill | |
| D200,391 S | 2/1965 | Baratelli | |
| 3,179,950 A | * 4/1965 | Gross et al. | ................... 351/52 |
| D204,417 S | 4/1966 | Shindler | |
| 3,756,704 A | 9/1973 | Marks | |
| 3,838,914 A | 10/1974 | Fernandez | |
| D387,084 S | * 12/1997 | Bolle' | ....................... D16/327 |
| D398,021 S | * 9/1998 | Bolle | ....................... D16/315 |
| D476,354 S | * 6/2003 | Chen | ........................... D16/315 |
| D483,391 S | * 12/2003 | Hirschman | ................. D16/315 |
| D483,392 S | * 12/2003 | Chen | ........................... D16/315 |
| D513,275 S | * 12/2005 | Yee | ........................... D16/326 |
| 2006/0238700 A1 | * 10/2006 | Del Vecchio | ............... 351/103 |

OTHER PUBLICATIONS

Oakley Bottlecap Sunglasses. Downloaded Dec. 7, 2006 at http://www.framesdirect.com/framesfp/Oakley-tcpake/lb.html. This item not cited as prior art but as general reference only.*
Oakley, Inc., "Oakley Official Eyewear Catalog 2002," published 2002, pp. 12 and 22, Foothill Ranch, California.
"Nike Skylon EXP" sunglass, printed from www.sunglasshut.com on Mar. 25, 2005, unknown publication date.
"Bolle Mongel" sunglass, printed from www.sunglasshut.com on Mar. 25, 2005, unknown publication date.
Oakley, Inc., "Oakley Yardstick" prescription eyeglass, printed from www.oakley.com, published Mar. 2003.

* cited by examiner

*Primary Examiner*—Philip S. Hyder
*Assistant Examiner*—RoseLynn (Ulm) Cody
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of the eyeglass of the present invention;

FIG. **2** is a front elevational view thereof;

FIG. **3** is a rear elevational view thereof;

FIG. **4** is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;

FIG. **5** is a top plan view thereof; and,

FIG. **6** is a bottom plan view thereof.

**1 Claim, 4 Drawing Sheets**



**U.S. Patent**     May 29, 2007     Sheet 1 of 4     US D543,572 S



## FIG. 1

**U.S. Patent**       May 29, 2007       Sheet 2 of 4       US D543,572 S



*FIG. 2*



*FIG. 3*



*FIG. 4*

U.S. Patent        May 29, 2007        Sheet 3 of 4        US D543,572 S



## FIG. 5



# FIG. 6

# EXHIBIT C

US00D616919S

(12) **United States Design Patent** 　(10) **Patent No.:** 　　**US D616,919 S**
　　Thixton 　　　　　　　　　　　　　　　　(45) **Date of Patent:** 　** 　**Jun. 1, 2010**

(54) **EYEGLASS FRONT**

(75) Inventor: **Lek Thixton**, Eastsound, WA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/348,087**

(22) Filed: **Nov. 25, 2009**

**Related U.S. Application Data**

(62) Division of application No. 29/315,956, filed on Aug. 10, 2009, now Pat. No. Des. 610,604.

(51) **LOC (9) Cl.** ................................................. **16-06**
(52) **U.S. Cl.** .................................................... **D16/326**
(58) **Field of Classification Search** ............... D16/101, D16/300–342; D29/109–110; D24/110.2; 351/41, 44, 51–52, 62, 158, 92, 103–123, 351/140, 153, 45–46; 2/426–432, 447–449, 2/441, 436, 434–437, 13, 15; D21/483, 659–661
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D204,812 | S | 5/1966 | Shindler |
| D210,418 | S | 3/1968 | Bloch |
| D377,803 | S | 2/1997 | Wilson |
| D378,375 | S | 3/1997 | Tsai |
| D390,589 | S | 2/1998 | Simioni |
| D397,351 | S | 8/1998 | Simioni |
| D400,230 | S | 10/1998 | Arnette |
| D406,858 | S | 3/1999 | Arnette |
| D411,560 | S | 6/1999 | Arnette |
| D415,515 | S | 10/1999 | Arnette et al. |
| D420,035 | S | 2/2000 | Hartman |

| | | | | |
|---|---|---|---|---|
| D422,010 | S | | 3/2000 | Arnette |
| D430,591 | S | | 9/2000 | Arnette |
| D488,499 | S | | 4/2004 | Mage |
| D500,781 | S | | 1/2005 | Mage |
| D534,573 | S | | 1/2007 | Mage |
| D536,027 | S | | 1/2007 | Paulson |
| D539,830 | S | | 4/2007 | Saderholm et al. |
| D547,794 | S | | 7/2007 | Jannard et al. |
| D550,272 | S | | 9/2007 | Markovitz |
| D552,665 | S | | 9/2007 | Mage |
| D554,689 | S | | 11/2007 | Jannard et al. |
| D556,818 | S | | 12/2007 | Jannard et al. |
| D558,816 | S | | 1/2008 | Yee |
| D561,810 | S | | 2/2008 | Fox et al. |
| D575,323 | S | * | 8/2008 | Jannard et al. .............. D16/326 |
| D604,759 | S | * | 11/2009 | Rohrbach et al. .......... D16/326 |

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) 　　　　　　**CLAIM**

The ornamental design for an eyeglass front, as shown and described.

　　　　　　**DESCRIPTION**

FIG. **1** is a front perspective view of the eyeglass front of the present invention;

FIG. **2** is a front elevational view thereof;

FIG. **3** is a rear elevational view thereof;

FIG. **4** is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;

FIG. **5** is a top plan view thereof; and,

FIG. **6** is a bottom elevational view thereof.

**1 Claim, 3 Drawing Sheets**



**Exhibit C**
**Page 12**



# *FIG. 1*

**Exhibit C**
**Page 13**



# FIG. 2



# FIG. 3



# FIG. 4

Exhibit C
Page 14



*FIG. 5*

*FIG. 6*

Exhibit C
Page 15

# EXHIBIT D

US00D478929S

(12) **United States Design Patent**     (10) Patent No.:     **US D478,929 S**
     Baden et al.                         (45) Date of Patent:     ✳✳ **Aug. 26, 2003**

(54) **EYEGLASS**

(75) Inventors: **Colin Baden**, Irvine, CA (US); **Hans Karsten Moritz**, Foothill Ranch, CA (US); **James H. Jannard**, Spieden Island, WA (US); **Lek Thixton**, Eastsound, WA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/174,707**

(22) Filed: **Jan. 22, 2003**

(51) **LOC (7) Cl.** .................................................. **16-06**
(52) **U.S. Cl.** .................................................. **D16/326**
(58) **Field of Search** ....................... D16/101, 300–330, D16/335; D29/109, 110; 351/41, 44, 51, 52, 111, 158; 2/446–448

(56)                  **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D167,704 S | 9/1952 | McCardell |
| D187,299 S | 2/1960 | Behr |
| D189,436 S | 12/1960 | Carmichael |
| D192,884 S | 5/1962 | Petitto |
| D198,939 S | 8/1964 | Huggins |
| D204,417 S | 4/1966 | Shindler |
| D204,418 S | 4/1966 | Ramp |
| D205,419 S | 8/1966 | Griss |
| D209,095 S | 10/1967 | Ramp |
| D363,504 S | 10/1995 | Arnette |
| D373,781 S | 9/1996 | Simioni et al. |
| D378,375 S | 3/1997 | Tsai |
| D384,686 S | 10/1997 | Jannard et al. |
| D390,589 S | 2/1998 | Simioni |
| D391,596 S | 3/1998 | Simioni |
| D392,307 S | 3/1998 | Wilson |
| D397,350 S | 8/1998 | Jannard et al. |
| D397,351 S | 8/1998 | Simioni |
| D399,238 S | 10/1998 | Simioni |

| | | |
|---|---|---|
| D399,239 S | 10/1998 | Jannard et al. |
| D400,908 S | 11/1998 | Arnette |
| D404,754 S | 1/1999 | Yee et al. |
| D415,188 S | 10/1999 | Thixton et al. |
| D420,035 S | 2/2000 | Hartman |
| D423,034 S | 4/2000 | Arnette |
| D423,548 S | 4/2000 | Yee et al. |
| D426,568 S | 6/2000 | Conway |
| D449,641 S | 10/2001 | Arnette |
| D461,834 S | 8/2002 | Jannard et al. |
| D463,478 S | 9/2002 | Moritz |
| D464,669 S | 10/2002 | Thixton et al. |

OTHER PUBLICATIONS

Ray–Ban catalog, p. 18, 1997.*
B.B. SOL, "Mode 72", published by B.B. Sol, France, unknown publishing date.
U.S. patent application Ser. No. 29/162,863, Moritz, filed Jun. 20, 2002.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57)                  **CLAIM**

The ornamental design for an eyeglass, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of the eyeglass of the present invention;
FIG. **2** is a front elevational view thereof;
FIG. **3** is a rear elevational view thereof;
FIG. **4** is a left-side elevational view thereof, the right-side elevational view being a mirror image therof;
FIG. **5** is a top plan view thereof; and,
FIG. **6** is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

1 Claim, 4 Drawing Sheets





# FIG. 1



**_FIG. 2_**



**_FIG. 3_**



**_FIG. 4_**



## FIG. 5



*FIG. 6*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| OAKLEY, INC., a Washington corporation | JAY Y ENTERPRISES CO., INC., a California corporation |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Michael K. Friedland, Lauren K. Katzenellenbogen, Ali S. Razai KNOBBE, MARTENS, OLSON & BEAR LLP 2040 Main St., 14th Fl., Irvine, CA 92614 | **'13 CV 0866 GPC JMA** |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. Sec. 271

Brief description of cause:
Patent Infringement of U.S Patent Nos. 5638145, D543572, D616919, and D478929

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ To be determined

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Cathy Ann Bencivengo

DOCKET NUMBER 12-CV-2458

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/10/2013 | /s/Ali S. Razai |

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.